IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

SEAN PERRY,

    Plaintiff,

v.                         CIVIL NO.: WDQ-12-2043

AGCO CORPORATION,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Sean Perry sued AGCO Corporation ("AGCO") for negligence. For the following reasons, AGCO's unopposed motion for summary judgment will be granted.[1]

I. Background[2]

In January 2009, Perry sought employment through A-Plus Employment Agency of Maryland, Inc. ("A-Plus"), a temporary employment agency that provides staffing to warehousing companies. Perry Dep. at 15:5-9; 16:14; 17:13-15.[3] A-Plus

---

[1] Because AGCO is entitled to summary judgment, its motions for leave to amend its answer to assert the affirmative defenses of contributory negligence and assumption of the risk will be denied as moot.

[2] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] A-Plus's Maryland location has since closed; the company's remaining offices are in Pennsylvania. Perry Dep. at 14:16-21.

assigned Perry to work as a forklift driver at AGCO's Edgewood, Maryland facility. *Id.* at 13:12-17; 16:15-22; 37:6-14.[4] Perry reported to AGCO "soon thereafter." *Id.* at 37:15-17. On his first day, Perry met with his supervisor "Ginny"[5] to discuss company rules, including that he wear AGCO-issued gloves while doing certain types of work. *Id.* at 37:18-22; 38:8-22.[6] Ginny introduced Perry to "Mike,"[7] who would be Perry's "lead" in the shipping and receiving department. *Id.* at 40:7-14.

Perry worked at AGCO for about three months. Perry Dep. at 13:20; 15:14-17.[8] During that time, Perry's principal duty was to "do put-aways," which included unloading, scanning, and storing machines delivered to the facility. *See id.* at 40:15-18, 21-22; 41:1-2. AGCO directed the put-away process and supplied Perry with the necessary tools, including scanners,

---

[4] AGCO's Edgewood facility receives, assembles, and ships farming equipment. Donnelly Aff. ¶ 3. ("Donnelly" is James Donnelly, the Edgewood facility's Assembly Center Manager. *Id.* ¶ 2.) AGCO uses A-Plus's temporary employment services "[o]n occasion" to staff the Edgewood facility. *Id.* ¶ 4.

[5] Ginny's last name is not in the record.

[6] Perry understood that failure to comply with AGCO's rules could result in discipline or termination. Perry Dep. at 44:12-22; 45:1-2, 13-16.

[7] It is unclear whether "Mike" is, as AGCO suggests, Mike McCannon. *See* Perry Dep. at 38:10-11.

[8] Perry generally worked eight hours a day, Monday through Saturday. Perry Dep. at 51:5-6; *see id.* at 54:13-20. He traveled directly from his home to work and from work to home, without making any stops at A-Plus. *Id.* at 51:11-22.

2

forklifts, crow bars, sledgehammers, and pliers. *See id.* at 43:5-17. *See generally id.* at 52-53. Perry did the same general tasks--and received the same treatment and supervision--as the AGCO employees who had not been hired through a temp agency. *Id.* at 47:18-20; 48:11-18; 49:1, 6-9. AGCO determined Perry's work schedule, including overtime hours and the timing of meal breaks. *Id.* at 49:16-21; 51:7-10; 52:1-10.[9]

In the afternoon on April 29, 2009, Perry was working at the facility's receiving dock when a truck arrived carrying one or more tedders.[10] Perry Dep. at 14:4-7; 54:13-17; 55:8-10; 56:7-12. Not having seen a tedder before, *id.* at 56:10-11, 17-19, Perry and about four coworkers asked tractor operators Lloyd Presberry and Rich Zeigler for help in moving the first one, *id.* at 58:2-10; 59:11-12. Zeigler backed an AGCO tractor up to the tedder, *id.* at 59:11-12, 15-17, as Perry and others prepared to connect the two machines, *id.* at 59:21-22; 60:1-5. Presberry told Perry to watch how he matched the pins so that Perry could

---

[9] AGCO was billed by, and made payments to, A-Plus for Perry's work, at a rate of $17.40 per regular hour and $26.10 per overtime hour, of which Perry received $12.00 and $18.00, respectively. Donnelly Aff. ¶ 7; *see id.*, Ex. B.

[10] A "tedder" is a machine for stirring and spreading hay to accelerate drying and curing. *Definition of TEDDER*, Merriam-Webster, http://www.merriam-webster.com/dictionary/tedder (last visited May 30, 2013).

learn how to unload the remaining tedders. *Id.* at 60:6-9.[11] While Perry was standing behind Presberry, and against the left side of the tedder, he heard Presberry yell, "no, no, no, stop." *Id.* at 60:8-12, 22; 61:7-10, 13-14. Before Perry could move out of the way, the tedder fell on him, pinning him to the ground. *Id.* at 62:6-7; 64:19-22; 65:1-3.[12] Perry lost consciousness. *Id.* at 63:18-22. His next memory is of someone pulling him from under the machine. *Id.* at 65:7-10.

Perry was transported by helicopter to the Shock Trauma Center at the University of Maryland Hospital in Baltimore, Maryland. Perry Dep. at 66:7, 9-17; 67:13-16. He was discharged from shock trauma later that evening. *Id.* at 67:7-12. Perry went to AGCO the next day to give Ginny his disability slip, which required him to see either AGCO's doctor or his own for follow-up examination. *Id.* at 67:22; 68:1-9. Perry told Ginny that he hoped to be cleared for work in the near future. *Id.* at 68:18-22.

The Customer Service Agreement between AGCO and A-Plus required A-Plus to provide workers' compensation insurance coverage to all employees assigned to AGCO. Donnelly Aff. ¶¶ 6,

---

[11] No one warned Perry that the tedder looked unsteady or to stay away because the procedure was dangerous. Perry Dep. at 61:2-6.

[12] It is unclear whether the tractor was on while the machines were being connected and before the tedder fell. *Id.* at 61:10-18.

4

8; *id.*, Ex. A § I.A. Perry received workers' compensation from A-Plus for the accident. Perry Dep. at 35:2-13.

On April 25, 2012, Perry filed suit against AGCO for negligence in the Circuit Court for Harford County, Maryland. ECF No. 2.[13] On July 9, 2012, AGCO answered the complaint. ECF No. 6. On July 10, 2012, AGCO removed the action to this Court on the basis of diversity jurisdiction. ECF No. 1.[14] On September 25, 2012, AGCO moved to amend/correct its answer to the complaint (the "first motion to amend"). ECF No. 18. The motion referenced, but did not attach, a supporting memorandum and the proposed amended answer. *Id.* On October 10, 2012, AGCO filed another motion to amend, to which it attached these missing documents (the "second motion to amend"). ECF No. 19. On October 31, 2012, Perry opposed AGCO's motions to amend. ECF No. 20.[15] On November 6, 2012, AGCO moved for summary judgment. ECF No. 21. On November 16, 2012, AGCO replied in support of its second motion to amend. ECF No. 22. Perry has not opposed AGCO's motion for summary judgment. *See* docket.

---

[13] The complaint alleged that an "agent, employee, and/or servant" of AGCO negligently operated the tractor, causing the tedder to fall on and seriously injure Perry, and sought $1 million in damages. ECF No. 2.

[14] Perry is a Maryland citizen; AGCO has its principal place of business in Georgia and is incorporated in Delaware. ECF No. 1 ¶ 4.

[15] The opposition was untimely. *See* docket.

II. Analysis

  A. Legal Standard

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[16] In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). A party opposing summary judgment

---

[16] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

"may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 525.

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [his] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks and citation omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit." *Id.* "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Sufficient time for discovery is "considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 246-47 (internal quotation marks omitted).

B. AGCO's Motion for Summary Judgment

AGCO argues that it is entitled to summary judgment because, as Perry's employer, it is immune from suit under Maryland's Workers' Compensation Act (the "WCA").[17] ECF No. 21 ¶

---

[17] Md. Code Ann., Lab. & Empl. §§ 9-101, *et seq.*

3; ECF No. 21-1 at 4. Perry has not opposed AGCO's motion. *See* docket.

The WCA provides "the exclusive remedy to an employee for an injury or death arising out of and in the course of employment."[18] Ordinarily, whether the injury occurred in the course of employment is a mixed question of law and fact. *Harrison v. Cent. Constr. Corp.*, 108 A. 874, 878 (Md. 1919). But, "when the facts are undisputed and there is no dispute as to the inferences to be drawn from the facts," the question "becomes one of law [that] may be decided by the Court." *Id.*[19] "Whether an employer-employee relationship exists in the context of workers' compensation depends typically on the common law rules of the 'master' and 'servant' relationship." *Rodrigues-Novo v. Recchi Am., Inc.*, 846 A.2d 1048, 1052 (2004). Relevant factors include: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer."

---

[18] *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D. Md. 2011) (*citing* Md. Code Ann., Lab. & Empl. § 9-509).

[19] *See also Great Atl. & Pacific Tea Co. v. Imbraguglio*, 697 A.2d 885, 893 (Md. 1997) ("When . . . the existence of the [employer/employee] relationship is undisputed, or the evidence on the issue is uncontroverted, unless conflicting inferences can be drawn from that evidence, the trial court is entitled to treat the matter as a question of law.").

8

*Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803, 808-09 (Md. 1985). Of the five factors, the power to "control" is "the most important." *Id.* at 809.

Here, the factors--particularly AGCO's control over Perry--clearly establish an employer/employee relationship. AGCO determined Perry's work schedule, including overtime hours and the timing of meal breaks. Perry Dep. at 49:16-21; 51:7-10; 52:1-10. AGCO also directed how Perry accomplished his principal duties ("put-aways"), and provided the necessary tools for the job. *See id.* at 43:5-17. *See generally id.* at 52-53. Perry performed the same general tasks--and received the same treatment and supervision--as AGCO's regular employees. *Id.* at 47:18-20; 48:11-18; 49:1, 6-9. Failure to comply with AGCO's rules and procedures could result in discipline or termination. *Id.* at 44:12-22; 45:1-2, 13-16. Finally, A-Plus billed AGCO for more than what it paid Perry, presumably for such expenses as A-Plus's payment for workers' compensation coverage. Donnelly Aff. ¶¶ 6-8; *id.*, Exs. A, B; *cf. Whitehead*, 497 A.2d at 809. In so doing, AGCO "actually contributed to the insurance protection of one of its employees." *Whitehead*, 497 A.2d at 809. Even drawing all justifiable inferences in Perry's favor, there is no

question that AGCO was Perry's employer for purposes of the WCA.[20]

In addition to the traditional common law test, the Maryland Court of Appeals has relied on the "lent employee" or "dual employment" doctrine to determine whether an employee of a "labor broker" is also "an employee of the customer." *Whitehead*, 497 A.2d at 811. Under the lent employee doctrine,

> [w]hen a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) The employee has made a contract to hire, expressed or implied, with the special employer;
>
> (b) The work being done is essentially that of the special employer; and
>
> (c) The special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

---

[20] That Perry was employed by A-Plus while he worked for AGCO does not change the Court's conclusion, for "[a] worker may simultaneously be the employee of two employers." *Whitehead*, 497 A.2d at 809; *see also id.* ("While this Court has not previously determined that temporary services workers are employees of the company to which they are sent, other jurisdictions . . . are generally in accord with our holding that temporaries . . . who work in employment circumstances similar to the one here present[] are[,] as a matter of law, employees of the customer."); *id.* at 809-10 (collecting cases). Because AGCO was Perry's actual employer, the Court need not consider AGCO's alternative argument that it was Perry's "statutory" employer under Md. Code Ann., Lab. & Empl. § 9-508 ("Principal contractor liability for compensation"). *See* ECF No. 21-1 at 14-15.

*William J. Burns Int'l Detective Agency, Inc. v. Ferris*, 299 A.2d 487, 492-93 (Md. Ct. Spec. App. 1973) (internal quotation marks omitted). Part (a) of the test is met if the employee consents to the special employment relationship. *Whitehead*, 497 A.2d at 812. In *Whitehead*, consent was found when the lent employee voluntarily reported to work on two consecutive days and submitted to the special employer's "direction and control." *Id.*

Although the lent employee analysis differs somewhat from analysis under the traditional common law factors, the outcome here is the same. By voluntarily reporting to AGCO for three months, Perry impliedly contracted to work for the company. Perry Dep. at 13:20; 15:14-17; *see Whitehead*, 497 A.2d at 812. Perry's duties--unloading trucks and scanning and storing delivered items--were within the ordinary course of AGCO's business. Perry Dep. at 47:18-20; 48:11-18; 49:1, 6-9. Finally, as discussed above, AGCO exercised significant control over numerous aspects of Perry's employment. *See supra*.

Under the traditional and lent employee analyses, AGCO was Perry's employer at all relevant times. Accordingly, Perry's tort action is preempted by the WCA. *See McCullough*, 830 F. Supp. 2d at 99. AGCO's motion for summary judgment will be granted.

III. Conclusion

For the reasons stated above, AGCO's unopposed motion for summary judgment will be granted, and its motions to amend the answer will be denied as moot.

_____6/12/13_____  
Date

_____[signature]_____  
William D. Quarles, Jr.  
United States District Judge